IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:19-CR-18-D
No. 2:22-CV-7-D

| | |
|---|---|
| BARRINGTON STRAUCHN, JR., )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | **ORDER** |

On August 19, 2020, Barrington Strauchn, Jr. ("Strauchn" or "petitioner") moved pro se for an emergency sentence reduction based on the COVID-19 pandemic [D.E. 90]. On February 7, 2022, Strauchn moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 101] and, through counsel, filed a memorandum in support [D.E. 114]. The same day, Strauchn moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 102-month sentence [D.E. 102]. On April 4, 2022, the government responded in opposition to Strauchn's motion for compassionate release [D.E. 117]. On April 11, 2022, Strauchn replied. [D.E. 120]

On April 8, 2022, the government moved to dismiss Strauchn's section 2255 motion [D.E. 118] and filed a memorandum in support [D.E. 119]. On May 25, 2022, Strauchn moved for leave to file a motion in response to the government's motion to dismiss, and the court has considered Strauchn's response [D.E. 126]. As explained below, the court denies Strauchn's motions for compassionate release, grants the government's motion to dismiss, and dismisses Strauchn's section 2255 motion.

I.

In 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") was investigating firearms found during drug and homicide investigations in Canada. See Revised Presentence Investigation Report ("PSR") [D.E. 61] ¶ 11. Kadarius Williams purchased the firearms. See id. On January 28, 2019, Williams spoke with ATF agents. Id. at ¶ 12. Williams told agents that he purchased approximately 17 firearms for Strauchn. Id. Williams explained that he purchased the firearms for Strauchn because Strauchn was a felon and unable to purchase the weapons himself. Id. Williams told agents that Strauchn told Williams what kind of firearms to buy and confirmed that he had purchased for Strauchn the four firearms found in Canada. Id. The ATF's investigation found ATF Form 4473s submitted for 13 firearms that Williams purchased for Strauchn. Id. at ¶ 13.

On August 2, 2019, under supervision of ATF investigators, Williams made a recorded phone call to Strauchn. Id. at ¶ 14. During this call, Strauchn confirmed that Strauchn had taken firearms to Canada and still had eight firearms in his possession. See id. On December 2, 2018, deputy marshals from the United States Marshals Service obtained a warrant and arrested Strauchn at the home of his girlfriend, Trina Spivey. Id. Following the arrest, Spivey told agents that Strauchn had a weapon under the mattress in the master bedroom. Id. There, agents found a loaded Ruger P90 pistol. Id. Strauchn admitted that the gun belonged to him, but denied purchasing any firearms from Williams. Id.

On February 10, 2020, pursuant to a written plea agreement [D.E. 36], Strauchn pleaded guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924 (count twelve). See [D.E. 31, 36]; Rule 11 Tr. [D.E. 91] 24–34. During the Rule 11 proceedings, the court informed Strauchn of the elements of possession of a firearm by a

2

convicted felon in accordance with Rehaif v. United States, 139 S. Ct. 2121 (2019). See Rule 11 Tr. 24–34. Strauchn's plea agreement also properly recounted the elements under Rehaif. See Plea Ag. [D.E. 36] ¶ 3.a. Pursuant to the plea agreement, the government agreed to dismiss one count of conspiracy to deal in firearms without a licence (count one). Id. at ¶ 4.a.[1]

The PSR calculated Strauchn's total offense level to be 25, his criminal history category to be I, and his advisory guidelines range on count twelve to be 57 to 71 months' imprisonment. See PSR ¶ 75. On June 11, 2020, the government moved for an upward departure based on Strauchn's understated criminal history. See [D.E. 65].

On June 18, 2020, the court held Strauchn's sentencing hearing. The court adopted the facts in the PSR and resolved the parties' objections. See Fed. R. Crim. P. 32(i)(3)(A)–(B); Sent. Tr. [D.E. 94] 5–50. The court found Strauchn responsible for possessing a firearm after having been convicted of a felony, engaging in a conspiracy to traffic at least 18 firearms and to possess or transfer firearms with the knowledge, intent, or reason to believe they would be transported out of the United States, and having an aggravating role in gun trafficking. Sent. Tr. at 5–50; PSR ¶ 15. After considering arguments from both parties, the court denied the government's motion for upward departure under U.S.S.G. § 4A1.3 but added two levels to Straunch's offense level for obstruction of justice under U.S.S.G. § 3C1.1. See Sent. Tr. at 6–34. The court adopted a total offense level of 27, a criminal history category of I, and an advisory guideline range of 70 to 87 months' imprisonment. See id. at 33–34. After thoroughly considering the arguments of counsel (including defense counsel's arguments about COVID-19), Strauchn's allocution, and all relevant factors under 18 U.S.C. § 3553(a), the court upwardly varied and sentenced Strauchn to 102 months'

---

[1] Strauchn was indicted with Williams, but only counts 1 and 12 applied to Strauchn. See [D.E. 1].

3

imprisonment followed by three years of supervised release. Id. at 40–47; [D.E. 77].

On June 30, 2020, Strauchn appealed [D.E. 74]. On March 24, 2021, the Fourth Circuit affirmed. United States v. Strauchn, 846 F. App'x 215 (4th Cir. 2021) (per curiam) (unpublished). The Fourth Circuit held that the "102-month sentence is substantively reasonable." Id. at 216. The Fourth Circuit also held that the district court "reasonably determined" Strauchn's sentence given his "serious offense conduct and the extensive evidence" that Strauchn "actively attempted to obstruct law enforcement's ongoing investigation into an international firearms trafficking conspiracy." Id.

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A)(i)–(ii); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). This requirement is

4

nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, the defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and

5

compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children, incapacitated spouse, or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. U.S.S.G. § 1B1.13, cmt. n.1. "[T]he fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude [its] consideration for a reduction." Id. § 1B1.13, cmt. n.2.

On September 27, 2021, Strauchn applied to his warden for compassionate release. See [D.E. 101-1]. The warden did not respond to Strauchn's application. The government agrees that Strauchn satisfied section 3582(c)(1)(A)'s threshold timing requirements. See Muhammad, 16 F.4th at 130; [D.E. 117] 3. Accordingly, the court considers Strauchn's motion on the merits.

In support of his motion for compassionate release, Strauchn cites the COVID-19 pandemic, his age, and his health conditions (obesity, hypertension, asthma, a family history of cancer, and mental health and substance abuse problems). See [D.E. 114] 5, 11–18. Alternatively, Strauchn asks the court to grant his compassionate release motion and to convert a portion of his sentence to home confinement if the court believes additional confinement is necessary. Id. at 25–26.

Under the "medical condition of the defendant" policy statement, a defendant may qualify for compassionate release if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Strauchn argues that he is at a heightened risk of serious

6

Case 2:19-cr-00018-D   Document 127   Filed 09/16/22   Page 6 of 14

infection from COVID-19 due to his health conditions.[2] Strauchn, however, is fully vaccinated. See [D.E. 114] 18. The vaccine provides protection to Strauchn. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary

---

[2] Although the PSR and BOP medical records do not list Strauchn as "obese," Strauchn claims that his body mass index ("BMI") is 30.24, which is within the range for obesity. See [D.E. 114] 12. The court assumes without deciding that Strauchn is obese.

7

and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Strauchn from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46.

Besides the heightened risk of COVID-19 infection dues to his medical conditions, Strauchn does not otherwise allege that the BOP is not treating and monitoring his medical conditions. And arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the wide availability of COVID-19 vaccines, the current conditions at USP Lewisburg, PA where Strauchn is incarcerated,[3] and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited Sept. 15, 2022); cf. United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Moreover, the wide availability of COVID-19 vaccines for others means that Strauchn "largely faces the same risk from COVID-19 as those who are not incarcerated." Lemons, 15 F.4th at 751. Furthermore, Strauchn presents no evidence that he cannot provide self-care. Accordingly, reducing Strauchn's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

The court assumes without deciding that COVID-19, Strauchn's health conditions, his age, and his rehabilitation efforts constitute extraordinary and compelling reasons under the "other reasons" policy statement and section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread

---

[3]As of September 15, 2022, USP Lewisburg is reporting no positive cases of COVID-19 among inmates and staff. See https://www.bop.gov/coronavirus (last visited Sept. 15, 2022).

8

to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Strauchn's sentence or recommending home confinement. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

Strauchn is 58 years old and is incarcerated for possession of a firearm by a felon. See PSR ¶¶ 11–15. Strauchn's criminal behavior was very serious, and while awaiting sentencing, Strauchn obstructed an ATF investigation. See id.; Sent. Tr. at 6–34. Strauchn was involved in an international weapons tracking conspiracy involving at least 18 firearms. See PSR ¶¶ 11–14. Several of the weapons Strauchn transported were found at scenes of drug deals and homicides. See id. Notwithstanding the cooperation agreement in his plea agreement, Strauchn consistently lied to investigators. See Sent. Tr. at 6–34. Several times Strauchn told friends and family that he was misleading investigators, including lying that he did not know a co-conspirator. Id. Strauchn bragged that he was going to "take the rap" for the gun charge by covering for his co-conspirators. Id. at 16–20. He also repeatedly attempted to get friends and family to remotely wipe his phone and delete his social media in order to hide evidence of his lies. See id. at 17–18. He also insinuated that if his co-defendant, Williams, were to be placed in the same jail as Strauchn that Williams would be hurt. See id. at 14–15.

Before his latest federal conviction, Strauchn had a substantial criminal history, including a federal bank robbery by use of a deadly weapon conviction. See PSR ¶¶ 20–26. Strauchn has repeatedly violated parole or probation. See id. at ¶¶ 23, 25.

Strauchn has taken some positive steps while in prison after his sentencing. [D.E. 114] 23–25. For example, Strauchn works as an apprentice plumber and is on the wait list for a drug

9

education course. See id. Strauchn also has not committed an infraction during his current federal confinement. Id.

The court must balance Strauchn's generally positive post-sentencing record with his serious criminal conduct, his obstruction of the ATF's investigation, his violent criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2404–05 (2022); Pepper, 562 U.S. at 480–81; High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Strauchn's potential exposure to COVID-19, his age, his medical conditions, and his release plan. The court recognizes that Strauchn plans to live with his girlfriend in Sharpsburg. See [D.E. 114] 24. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Strauchn's arguments, the government's persuasive response, the need to punish Strauchn for his serious criminal behavior, to incapacitate Strauchn, to promote respect for the law, to deter others, and to protect society, the court denies Strauchn's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2404–05; Chavez-Meza, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32. To the extent Strauchn asks the court to recommend home confinement to the Bureau of Prisons, the court declines.

III.

Strauchn asserts two claims in his section 2255 motion: (1) ineffective assistance of counsel and (2) his guilty plea was not knowing or voluntary. See [D.E. 102] 6–10. Strauchn claims that the court failed to supply him with information required to knowingly and voluntarily plead guilty to being a felon in possession of a firearm under Rehaif v. United States, 139 S. Ct. 2191 (2019).

10

Id. He claims that the failure of trial and appellate counsel to object to this alleged Rehaif error constitutes ineffective assistance of counsel. Id. at 6–7.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

Strauchn procedurally defaulted his Rehaif claim by failing to raise it on direct appeal. Thus, the general rule of procedural default bars Strauchn from presenting this claim under section 2255. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders,

11

247 F.3d 139, 144 (4th Cir. 2001). Furthermore, Strauchn has not plausibly alleged "actual innocence" or "cause and prejudice" resulting from the alleged error about which he now complains. See Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999). Thus, this claim fails.

Alternatively, Strauchn's sworn statements during his Rule 11 hearing contradict his Rehaif claim, and Strauchen's sworn statements bind him. See Rule 11 Tr. at 24–34; see, e.g., Blackledge, 431 U.S. at 74; United States v. Moussaoui, 591 F.3d 263, 299–300 (4th Cir. 2010); United States v. Lemaster, 403 F.3d 216, 221–23 (4th Cir. 2005). During Strauchn's Rule 11 hearing, the court asked Strauchn whether "at the time you possessed a firearm, you knew that you had previously been convicted of a crime punishable by imprisonment for a term exceeding one year?" Rule 11 Tr. at 34. Strauchn replied "yes." Id. Strauchn's signed plea agreement also stipulates that Strauchn "understands, agrees, and admits" to all elements of the felon in possession charge, including the knowledge requirement concerning his status as a felon. Plea Ag. at ¶ 3. During Straunchn's Rule 11 hearing, Strauchn also confirmed that he reviewed and discussed the entire plea agreement with his lawyer and understood each term. Rule 11 Tr. at 28–30. The record demonstrates that Strauchn knew his status as a felon and the elements of his felon in possession charge when he pleaded guilty. See id. at 24–34; PSR ¶ 23; United States v. Mack, No. 19-4250, 2022 WL 1261753, at *1 (4th Cir. Apr. 28, 2022) (per curiam) (unpublished); United States v. Caldwell, 7 F.4th 191, 213 (4th Cir. 2021). Thus, Strauchn's Rehaif claim fails.

As for Strauchn's ineffective assistance claim against trial and appellate counsel, "[t]he Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is,

12

representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotations omitted). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 137 S. Ct. 1958, 1964–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001). To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–96 (1984); United States v. Mayhew, 995 F.3d 171, 176 (4th Cir. 2021).

When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 691–96. A party does so by showing "that there is a reasonable probability that," but for the deficiency, "the result of the proceeding would have been different." Id. at 694. When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see Lee, 137 S. Ct. at 1965. "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 137 S. Ct. at 1967 (citations and quotation omitted).

13

Strauchn alleges that trial counsel and appellate counsel were deficient by failing to challenge his guilty plea based on Rehaif. See [D.E. 102] 6–10. The court, however, complied with the requirements of Rehaif during the Rule 11 hearing. See Rule 11 Tr. at 24–34. Therefore, a Rehaif objection would have been baseless in this court or on appeal. The Sixth Amendment does not require counsel to make a baseless objection or argument. See Knowles v. Mirzayance, 556 U.S. 111, 124–26 (2009). Thus, the claim fails.

After reviewing the claims presented in Strauchn's motion, the court finds that reasonable jurists would not find the court's treatment of Strauchn's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

IV.

In sum, the court GRANTS petitioner's motion for leave to file [D.E. 126], DENIES petitioner's motions for compassionate release [D.E. 90, 101], GRANTS respondent's motion to dismiss [D.E. 118], DISMISSES petitioner's section 2255 motion [D.E. 102], and DENIES a certificate of appealability. The clerk shall close the case.

SO ORDERED. This 15 day of September, 2022.

JAMES C. DEVER III
United States District Judge

14